**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**-vs-** **Case No. 6:07-cv-726-Orl-19KRS**

**2003 LAMBORGHINI MURCIELAGO, Vin #ZHWBU16M53LA00862, 2004 DODGE VIPER, Vin # 1B3JZ65Z74V101034,**

**Defendants.**

---

# ORDER

This case comes before the Court on the following:

1. Motion of United States for Summary Judgement as to John Bruce King (Doc. No. 17, filed Aug. 24, 2007); and

2. Affidavit by Claimant John Bruce King in Opposition to Motion of United States for Summary Judgment, and in Support of Claimant's Counter-Motion for Summary Judgment (Doc. No. 23, filed Oct. 5, 2007).[1]

## Background

On August 22, 2006, federal agents seized a 2003 Lamborghini Murcielago and 2004 Dodge Viper which they believed were purchased by Thomas Bojadzijev and Lisa Clymer through funds traceable to criminal activities. (Doc. No. 17, pp. 1-2.) Claimant John Bruce King challenges the

---

[1] King did not file a memorandum in opposition to the Government's Motion for Summary Judgment, nor did he file a "Counter-Motion" for Summary Judgment, as the title of his affidavit implies. (*See* Doc. No. 23.) Accordingly, for purposes of this Order, the Court will consider the Government to be the sole moving party.

Government's action for forfeiture of the automobiles, asserting that he possesses an ownership interest in the automobiles resulting from loan agreements with Bojadzijev and Clymer. (Doc. No. 23, pp. 3-13.)

The Government's Complaint for Forfeiture in Rem alleges that Bojadzijev and Clymer committed mail fraud, wire fraud, conspiracy, and money laundering in violation of federal law. (Doc. No. 1, filed Apr. 27, 2007, p 1.) Specifically, Bojadzijev helped the CEO of Roanoke Technologies, David L. Smith, execute a "kickback scheme" by rendering fictitious services to the company and accepting stock in return. (Doc. No. 1, pp. 1-5.) Bojadzijev would then sell the stock and funnel the profits back to Smith in the guise of fabricated loans. (*Id.*) Lisa Clymer, Bojadzijev's girlfriend, wrote most of the checks involved in the scheme.[2] (*Id.* at p. 8.) Bojadzijev and Clymer deposited the funds derived from the scheme into bank accounts with Washington Mutual, Wachovia Bank, Bank of America, and Sun Trust Bank. (*Id.*) In February of 2004, they withdrew funds from these same accounts to purchase the Lamborghini and Dodge automobiles. (*Id.* at pp. 8-11.)

On May 30, 2007, Bojadzijev and Clymer agreed to relinquish all interest they held in the automobiles. (Doc. No. 9, filed May 29, 2007; Doc. No. 10, filed May 30, 2007.) On August 1, 2007, John Bruce King filed a Claim and Answer to the Government's action for forfeiture. (Doc. No. 14, filed Aug. 1, 2007; Doc. No. 15, filed Aug. 1, 2007.) The Answer asserts as an affirmative defense that King is an "innocent owner" of the automobiles under 18 U.S.C. section 983(d). (Doc. No. 14, p. 3.)

---

[2] Bojadzijev was named a defendant in a complaint for injunctive relief filed by the Securities and Exchange Commission. (Doc. No. 1, p. 3.) However, Bojadzijev and Clymer were not criminally prosecuted for their alleged involvement in the scheme. (*See* Doc. No. 1.)

King states that he loaned Bojadzijev $200,000 on February 10, 2006, in exchange for a "one hundred percent ownership interest and physical possession of the Lamborghini as security." (Doc. No. 23, p. 3.) King and Bojadzijev memorized the agreement in a promissory note, and King's ownership interest was reflected in a title certificate from the State of Florida and a document from State Farm, Bojadzijev's insurance company, recognizing King as an "additional insured." (*Id.* at pp. 3-4.) That same day, King loaned Clymer $35,000 in exchange for a one hundred percent ownership interest and physical possession of the Dodge Viper to hold as security. (Doc. No. 23, pp. 4-5.) Again, King and Clymer executed a promissory note, and the lien was memorialized in a title certificate and a document from State Farm recognizing King as an "additional insured." (*Id.*)

Bojadzjev and Clymer paid back the loans on March 8, 2006. (*Id.* at p. 5.) King states that "[a]lmost immediately after" the satisfaction of the first two loans, Bojadzjev and Clymer asked to borrow another $190,000. (*Id.* at p. 6.) They again offered the automobiles as collateral. (*Id.*) King agreed, and on May 18, 2006, the parties executed promissory notes memorializing two loans: (1) a loan of $150,000 to Bojadzjev with an one hundred percent ownership interest in the Lamborghini as collateral; and (2) a loan of $40,000 with an one hundred percent ownership interest in the Dodge as collateral. (*Id.* at pp. 6-10.) According to King, the parties agreed that the certificates of title from the February 10th loans would reflect King's status of a lien holder under new agreement. (*Id.* at pp. 7-8.) The parties also agreed to "carry over" King's status as an additional insured from the first set of loans to the second set of loans. (*Id.*)

On August 22, 2006, King received a call from a federal agent who informed King that United States had obtained seizure warrants for the Lamborghini and Dodge automobiles. (*Id.* at p. 10.) King states that this phone call was the first time he learned that the Government had an

ownership interest in the vehicles. (*Id.*) King cooperated with the agents, allowing them to seize the automobiles from a rental unit at Extra Space Storage. (Doc. No. 17, p. 1.) Six days later, on the advice of counsel, King recorded his security interests in the Lamborghini and Dodge with the Public Records of Seminole County, Florida. (*Id.* at p. 11.)

The Government filed a Motion for Summary Judgment on August 24, 2007. (Doc. No. 17.) The Government argues that King's "innocent owner" defense is invalid because King has not presented any evidence that he was a "bona fide purchaser for value." (*Id.* at pp. 6-9.) King filed an affidavit in response to the Government's motion, asserting that he held a lien on both automobiles and was not aware that automobiles were purchased with funds derived from criminal activities. (Doc. No. 23.)[3]

**Standard of Review**

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. *Hickson Corp.*, 357 F.3d at 1259. An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. *Id.* at 1260. A court must decide "whether the evidence presents a sufficient disagreement

[3] King also states throughout his affidavit that Bojadzjev and Clymer defaulted on the loans, vesting King with a one hundred percent ownership interest in the automobiles. (Doc. No. 23). The Court defers ruling on the factual and legal correctness of this conclusion, as it does not bear on the issues presented by the Government's Motion for Summary Judgment.

to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*; *Anderson*, 477 U.S. at 251-52.

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, a court must not grant summary judgment. *Id.* On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

Furthermore, according to Rule 56(e), "If the opposing party does not . . . respond, summary judgment, if appropriate, shall be entered against that party." The Eleventh Circuit Court of Appeals has explained that a district court cannot base the entry of summary judgment "on the mere fact that the motion was unopposed, but rather, must consider the merits of the motion." *United States v. 5800 SW 74th Ave.*, 363 F.3d 1099, 1101 (11th Cir. 2004). A district court must review all of the documents submitted with the motion for summary judgment and must "ensure that the motion itself is supported by evidentiary materials." *Id.* at 1101-02. If these materials raise a genuine issue of material fact, summary judgment cannot be granted. *Id.* at 1103.

**Analysis**

Under the Civil Asset Forfeiture Reform Act ("CAFRA"), the United States may obtain title to property that was purchased through funds derived from violations of certain federal statutes. 18 U.S.C. § 981 (2006). However, the Act also provides that "[a]n innocent owner's interest in property shall not be forfeited under any civil forfeiture statute." *Id*. § 983(d)(1). The Act defines the term "owner" as:

> (A) . . . a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest; and
> (B) does not include–
> (i) a person with only a general unsecured interest in, or claim against, the property or estate of another;
> (ii) a bailee unless the bailor is identified and the bailee shows a colorable legitimate interest in the property seized; or
> (iii) a nominee who exercises no dominion or control over the property.

*Id.* § 983(d)(6). In cases where the property interest is acquired after the conduct giving rise to the forfeiture took place,[4] "innocent owner" is defined as "a person, who, at the time that person acquired interest in the property– (i) was a bona fide purchaser . . . for value (including a purchaser . . . of goods or services for value); and (ii) did not know and was reasonably without cause to believe that the property was subject to forfeiture." *Id.* § 983(d)(3)(A).

The Government has the burden to prove by a preponderance of the evidence that the "property is subject to forfeiture." *United States v. One 1988 Checolet 410 Turbo Prop Aircraft, Dominican Republic Registration Tail Number H1698CT*, 282 F. Supp. 2d 1379, 1382 (S.D. Fla.

---

[4] King does not dispute that the Government's ownership interest in the automobiles relates back to their purchase with criminal proceeds. (Doc. No. 17, p. 8 (citing *United States v. Bailey*, 419 F.3d 1208, 1212-13 (11th Cir. 2005)). Accordingly, any ownership interest King possesses would have arisen after the conduct giving rise to forfeiture.

2003). The burden then shifts to the claimant to prove by a preponderance of the evidence the "innocent owner" defense applies. (*Id.*)

In this case, the dispute solely concerns whether the innocent owner defense applies.[5] The Government argues that King was not a "bona fide purchaser" for value for two reasons. Primarily, the Government argues that King only became an "owner" within the meaning of section 983(d) when he recorded his security interest on August 28, 2006, six days after he learned that the automobiles were subject for forfeiture. (Doc. No. 17, pp. 8-10). If King became an "owner" after he learned about the seizure warrants, he cannot be considered a bona fide purchaser for value. (*Id.*) The Government also contends that King presented no evidence that he reasonably believed that the automobiles were not subject to forfeiture. (*Id*. at p. 7.)

**A. King's Status as an "Owner" Before August, 22, 2006**

Section 983(d)(6) first defines "owner" as "a person with an ownership interest in the specific property sought to be forfeited." Next, the section states that this definition "includ[es] a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest . . . ." *Id.* Finally, the section explains that this definition "does not include . . . (i) a person with only a general unsecured interest in, or claim against, the property or estate of another; (ii) a bailee

---

[5] In his Answer to the Government's Complaint, King denies that the property is subject to forfeiture. However, King did not submit a memorandum in response to the Government's Motion for Summary Judgment. Moreover, King's affidavit does not touch upon the issue of whether the automobiles are subject to forfeiture. Rather, King's affidavit solely concerns whether he is an innocent owner within the meaning of 18 U.S.C. section 983(d). As a result, the Court will presume that King does not oppose the Government's contention that the automobiles are subject to forfeiture. *See, e.g., Freshwater v. Shiver*, Case No. 6:05-cv-756; 2005 WL 2077306, at *2 (M.D. Fla. Aug. 29, 2005) (failure to oppose a dispositive motion raises an inference that the party does not object to such motion). The Court also notes that there is no evidence in the record which contradicts the Government's assertion that the automobiles are subject to forfeiture.

unless the bailor is identified and the bailee shows a colorable legitimate interest in the property seized; or (iii) a nominee who exercises no dominion or control over the property." *Id.* Relying heavily on the definition's first exclusion, the Government argues that King was not an owner because he held only a "general unsecured interest" in the automobiles until he recorded his security interest. (Doc. No. 17, pp. 8-10).

The Government's argument suffers from two flaws. First, the Government misconstrues the term "general unsecured interest." Courts look to the property law of the state where the acts of forfeiture occurred to determine the extent of an owner's interest. *2001 Honda Accord*, 245 F. Supp. 2d at 607-08; *see also United States v. One Single Family Residence Without Buildings Located at 15621 S.W. 209th Avenue, Miami, Florida*, 894 F.2d 1511, 1514 (11th Cir. 1990) (applying Florida law to the question of ownership under a federal forfeiture statute). In this case, Bojadzjev purchased the automobiles in central Florida. (Doc. No. 1, pp. 8-9.) Under Florida's version of the Uniform Commercial Code ("UCC"), a creditor's interest in collateral attaches, and the creditor therefore becomes a secured creditor, upon the execution of a security agreement. Fla. Stat. § 679.2031 (2007). At that point, the creditor is no longer a general unsecured creditor. *See id.* Moreover, if the creditor takes possession of the collateral, his security interest is automatically perfected and he is not required to record. *Id.* § 679.3131(1). Here, King became a secured creditor when he executed the promissory notes which gave him a security interest in the automobiles. (*See* Doc. No. 23-2, pp. 11-12, 15-16.) King became a perfectly-attached secured creditor when he took possession of the automobiles. Florida law did not require him to record his interest.

Section 983(d)(6) explains that the term "owner" always includes a person with a "recorded security interest" and never a person with a "general unsecured interest." Under the UCC, a perfectly attached, but unrecorded, security interest is nearly equivalent to a "recorded security interest." *See* Fla. Stat. § 679.3131. In any event, a perfectly attached but unrecorded security interest is much closer to a "recorded security interest" than a "general unsecured interest." Because of this strong similarity, it is reasonable to believe that Congress intended for a person who possesses a perfectly attached, but unrecorded, security interest to be considered an "owner" under section 983(d)(6). Accordingly, King's security interest qualified him as an "owner" when he executed the loan agreement and took possession of the automobiles.

The Government's contention that King is not an "owner" also ignores subsection (d)(6)(B)(ii) of section 983. According to the statute, an owner does not include "a bailee unless the bailor is identified and the bailee shows a colorable legitimate interest in the property seized . . . ." § 983(d)(6)(B)(ii). Congress's use of the word "unless" logically implies that a bailee qualifies as an owner if the "the bailor is identified and the bailee shows a colorable legitimate interest in the property seized." *Id.*; *see also U.S. v. $746,198 in U.S. Currency*, 299 F. Supp. 2d 923, 933 (S.D. Iowa 2004) (finding that a bailee did not qualify as an "owner" because he failed to identify the bailor and demonstrate an interest in the seized property). In this case, the bailors were Bojadzjev and Clymer. King was the bailee and held a "colorable legitimate interest" in the automobiles

through his security interest.[6] Thus, King met the definition of a bailee "owner" under section 983(d)(6)(B)(ii) when he took possession of the automobiles.

The evidence in the record demonstrates that King was an "owner" of the automobiles on May 18, 2006, when he obtained a security interest and took possession of the automobiles. This date is well before King learned of the seizure warrants on August 22, 2006. Because King gained an ownership interest in the automobile before learning of the seizure warrants, genuine issues of material fact exist as to whether King was a bona fide purchaser for value.

**B. Objectively Reasonable Belief that the Property was not Subject to Forfeiture**

The Government next argues that King was not an "innocent owner" because King either knew or had reason to know that the automobiles were subject to forfeiture at the time he gained an ownership interest. Section 983(d)(3)(A) requires both a subjective and objectively reasonable belief that the property in dispute was not subject to forfeiture. *See* 18 U.S.C. 983(d)(3)(A) ("did not know and was reasonably without cause to believe"). The claimant cannot rely on "willful blindness" to support his lack of knowledge. *One 1988 Checolet 410 Turbo Prop Aircraft*, 282 F. Supp. 2d at 1381-83 (citing *United States v. 2001 Honda Accord*, 245 F. Supp. 2d 602, 611 (M.D. Pa. 2003)). Moreover, even when the claimant denies knowing that a piece of property was subject to forfeiture, the claimant's subjective knowledge may be inferred from circumstantial evidence. *Id.* at 1383.

---

6 The statute does not define "colorable legitimate interest," and no courts have analyzed the term. However, Black's Law Dictionary describes "colorable" as "appearing to be true, valid, or right." Black's Law Dictionary 282 (8th ed. 2004). Black's defines "legitimate" as "[c]omplying with the law" or "[g]eniune, valid." *Id.* at 920. Interest is defined as "[a] legal share in something." *Id.* at 828. Pieced together, "colorable legitimate interest" can be defined as a legal share that appears to be genuine and in compliance with the law. On the current state of the record, King's security interest in the automobiles fits this definition.

In this case, King has presented only one piece of evidence that supports his claim that he was not aware that the automobiles were subject to forfeiture. That evidence is on page ten of King's affidavit, where he states: "I learned of [the seizure warrants for the automobiles] only because I was told about them during a call from an agent of the U.S. Government . . . ." (Doc. No. 23, p. 10.) The Government contends that this denial is not enough evidence to survive a motion for summary judgment because King has not presented evidence that he conducted a reasonable inquiry or otherwise did not act in a willfully blind manner when he obtained an interest in the automobiles. (Doc. No. 17, p. 7.)

The Government essentially argues that an claimant must always produce, at the summary judgment stage, evidence that corroborates the claimant's denial that he knew the property was subject to forfeiture. This position is contradicted by the language of section 983(d)(3)(A). The Government correctly states that section 983(d) as a whole places the burden on the claimant to establish that the innocent owner defense applies. § 983(d)(1). However, section 983(d)(3)(A) only requires the claimant to prove that he "did not know and was reasonably without cause to believe that the property was subject to forfeiture." Nowhere does the statute *require* the claimant to investigate whether the property was subject to forfeiture or produce other evidence that negates the possibility of "willful blindness."[7]

Of course, whether the claimant conducted an investigation is relevant to both the objective and subjective aspects of the claimant's denial. The claimant's failure to investigate may be highly

[7] According to the case law, the duty to investigate arises once the claimant has become "subjectively aware of the high probability of the fact in question . . . ." *2001 Honda Accord*, 245 F. Supp. 2d at 611 n.8 (quoting *United States v. One 1973 Rolls Royce, VIN SRH-16266*, 43 F.3d 794, 810 (3d Cir. 1994)) (internal quotations omitted). In such a case, the claimant will be considered "willfully blind" if he fails to investigate. *Id.*

probative circumstantial evidence that he actually knew the property was subject to forfeiture, and the failure to investigate may also defeat the reasonableness of the claimant's belief that the property was not subject to forfeiture. *See One 1988 Checolet 410 Turbo Prop Aircraft*, 282 F. Supp. 2d at 1384 (finding that an airline's practice of leasing planes to employees without inquiring about the purpose of the flight was probative of its knowledge that the planes were used for illegal activities). Moreover, in some cases, enough circumstantial evidence negating the claimant's denial may exist in the record that the trier of fact could not reasonably find for the claimant based merely on the claimant's statements. *See, e.g., United States v. Real Property and Premises Known as 464 Myrtle Ave.*, No. 98-CV-3948, 2003 WL 21056786, *5-7 (E.D.N.Y. March 20, 2003) (granting summary judgment in favor of the government where overwhelming circumstantial evidence demonstrated the claimant's awareness that her home was used for criminal activity). In those cases, the claimant may be required to come forward at the summary judgment stage with corroborating evidence, such as a reasonable investigation, that supports the subjective and objective aspects of the claimant's denial. *See United States v. Property Identified as 1813 15th St., NW, Washington, DC*, 956 F. Supp. 1029, 1036 (D.D.C. 1997) ("Faced with overwhelming evidence to the contrary, a claimant cannot rely upon mere denials to prove an absence of actual knowledge, but rather must come forward with something more substantial.")

In this case, however, King denies knowing that the automobiles were subject to forfeiture, and the Government does not point to any circumstantial evidence in the record that makes his denial appear objectively unreasonable. (*See* Doc. No. 23). This is not a case where the property was used for an obvious criminal enterprise. *See, e.g., 464 Myrtle Ave.*, 2003 WL 21056786 at *5-7; *1813 15th St., NW, Washington, DC*, 956 F. Supp. at 1035-36. Moreover, the Government did not

indict Bojadzjev and Clymer, and there is no evidence in the record demonstrating that King should have known that Bojadzjev and Clymer were violating federal laws. Finally, at this stage of the litigation, the Court must draw all inferences in favor of King and against the Government. *Anderson*, 477 U.S. at 255. As the record stands now, genuine issues of material fact exist as to whether King reasonably believed that the automobiles were not subject to forfeiture when he gained an ownership interest on May 18, 2006.

**Conclusion**

The Motion of United States for Summary Judgement as to John Bruce King (Doc. No. 17, filed Aug. 24, 2007) is **DENIED**. **DONE** and **ORDERED** in Chambers in Orlando, Florida on December _6__, 2007.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record